## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHERYL BECK            :   CIVIL ACTION
                          :
      vs.                :
                          :   NO. 09-CV-1360
ARCADIA CAPITAL GROUP, INC., :
MICHAEL GOLDNER, and       :
GOLDNER, PAPANDON & DELUCCIA, :
LLC                         :

**FILED**

**OCT 0 1 2009**

**MICHAEL E. KUNZ, Clerk**
By_____Dep. Clerk

### MEMORANDUM AND ORDER

**JOYNER, J.**                             September 30, 2009

Presently pending before this Court are two motions for dismissal of the plaintiff's complaint filed by the defendants, Arcadia Capital Group, Inc. and Michael Goldner (Doc. No. 8), and Goldner, Papandon & Deluccia, LLC (Doc. No. 9) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons outlined in the following paragraphs, the motions shall be granted in part and denied in part.

### Factual Background

According to the allegations in the complaint[1], the parties had a "long standing business relationship going back to 2001 through the beginning of this year," pursuant to which the defendants would promote, offer and sell investments to the

---

[1]   Jurisdiction in this matter is predicated upon both federal question pursuant to 28 U.S.C. §1331 as one of the claims invokes §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78a, and diversity under 28 U.S.C. §1332 given that the plaintiff is a citizen of New York and all of the defendants are citizens of Pennsylvania.

plaintiff, Cheryl Beck. Throughout this period of time, Goldner, Papandon & Deluccia (hereafter "the accounting defendants" or "G, P & D") represented and/or provided accounting services and financial advice to Ms. Beck in addition to promoting and selling numerous investments to her. The complaint further avers that Defendant Michael Goldner is a practicing member and owner of both G, P & D and Defendant Arcadia Capital Group.

The current litigation arises out of a series of transactions beginning in March, 2006. At that time, Ms. Beck alleges that she became an investor in Defendants' real estate fund "covering office real estate and unimproved real estate" by tendering the amount of $600,000 and receiving a note in the amount of $690,000 back from the defendants. Plaintiff submits that she invested in this fund "based on the advice of the Defendants and Defendants' representation that she would have a direct security interest in real estate or equity interest in real estate that would secure her investment."[2] (Complaint, ¶s 9, 13-14). Thereafter on January 1, 2008, Ms. Beck having withdrawn $50,000 from the principal amount of this investment, the parties agreed to replace the $690,000 Note with one for $550,000. Under the terms of that Note, Arcadia was to pay the

---

[2] The real estate used to secure the plaintiff's investment was more particularly described in a March 11, 2006 e-mail memo to Cheryl Beck from Michael Goldner as consisting of: (1) Paoli Pike 16 lot subdivision 2; (2) Garden Street 3 lot subdivision; (3) ARCADIA portfolio mortgages; and (4) Ellsworth 2 lot build out. (Complaint, ¶15, Exhibit 2).

sum of $8,000 per month to the plaintiff until January 1, 2010, by which date the entire principal amount was to have been repaid and to deliver an Assignment of Proceeds from the Sale of Real Estate to Beck in the amount of $750,000.  In a handwritten note, Defendant Goldner again referenced the particular parcels of realty which would secure the investment, this time describing them as: (1) 1417 Locust; (2) Glenside PNC; (3) Russell Road, Paoli; and (4) North Coventry land, and noting that the $550,000 investment was protected by real estate security with $2,100,000 net equity. (Complaint, ¶s16-18; Exhibit 3).  Defendant Goldner also at or around this same time, executed a Surety Agreement by which he became an unconditional surety to Plaintiff "for the prompt payment and proper performance when due of all existing and future obligations of Borrower to Lender... ."  (Exhibit 1).

In May, 2008, Ms. Beck invested an additional $125,000 with Arcadia and in return received a $150,000 note, which represented $125,000 in principal and a preferred return of $25,000, to be repaid on or before September 25, 2008. (Complaint, ¶s 10-11, 22-23; Exhibit 5).  Because Arcadia has ceased making the payments due and owing under the notes and has purportedly failed to deliver the promised direct security and/or equity interests in the real estate referenced in Goldner's memos, Plaintiff instituted this lawsuit seeking to recover the balances due under the theories of breach of contract (Counts I - IV), fraud in the

3

inducement (Count V), breach of fiduciary duty (Count VI), for violations of the Securities Laws of the United States, Pennsylvania and New York (Counts VII - IX) and punitive damages (Count XI)[3].   Defendants move to dismiss the complaint against them in its entirety on the grounds that it wholly fails to plead viable claims upon which relief may be granted.

## Standards for Ruling on 12(b)(6) Motions

Generally speaking, the Federal Rules of Civil Procedure require that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  The fundamental function of a federal pleading is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." Kanter v. Barella, 489 F.3d 170, 175, n.4 (3d Cir. 2007), quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1182 (3d ed. 2004).  This is the essence of notice pleading and it requires a plaintiff to provide his or her opponent with fair notice of a claim and the grounds on which

---

[3]   This count appears to have been mis-labeled.  It should have been identified as "Count X."

4

that claim is based.  <u>Kanter</u>, at 175.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 173, 183 (3d Cir. 1993).  In ruling on a Rule 12(b)(6) motion to dismiss, the district courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. County of Allegheny,</u> 515 F.3d 224, 231 (3d Cir. 2008) (citations omitted).  To survive a motion to dismiss, the plaintiff must provide "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element[s]" of a particular cause of action.  <u>Id.</u> at 234 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1959 (2007)).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully; a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009), citing <u>Twombly</u>, 550 U.S. at 556, 570; <u>Miles v. Township of Barnegal</u>, No. 08-1387, 2009 U.S. App. LEXIS 20004 at *9 (3d Cir. Sept. 4, 2009).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short

of the line between possibility and plausibility of 'entitlement
to relief.'" Iqbal, supra, quoting Twombly, 550 U.S. at 557.

## Discussion

### 1.  Plaintiff's Breach of Contract Claims

The first four counts of the plaintiff's complaint are
captioned "Count I - Cheryl Beck's Claim for Unpaid Note of
$550,000," "Count II - Cheryl Beck's Claim for Payment of
$140,000 Which is Overdue," "Count III - Breach of Guarantees,"
and "Count IV - Breach of Obligation to Maintain an Escrow
Account to Provide Security for Cheryl Beck."  Parsing these
rather unusual headings, however, it appears that the essence of
these four counts is the alleged breach by the defendants of
their obligations to pay to the plaintiff the balance of the
monies owed her in accordance with their investment agreement and
to keep the monies loaned/invested by Plaintiff in an escrow
account until such time as it could be placed in "secure
investments."

Pleading a viable cause of action for breach of contract
under Pennsylvania law requires a complainant to plead: (1) the
existence of a contract, including its essential terms; (2) a
breach of a duty imposed by the contract, and (3) resultant
damages.  Edwards v. Wyatt, Nos. 07-1466, 07-1602, 2009 U.S. App.
LEXIS 10807 at *13-*14 (3d Cir. May 20, 2009); Ware v. Rodale
Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003); CoreStates Bank,

N.A. v. Cutillo, 1999 Pa. Super. 14, 723 A.2d 1053, 1058 (Pa.
Super. Ct. 1999).  Clarity is particularly important where an
oral contract is alleged.  Pennsy Supply, Inc. v. Ash Recycling
Corp., 2006 Pa. Super. 54, 895 A. 2d 595, 600 (Pa. Super. Ct.
2006).

In reviewing Counts III and IV[4] for compliance with these
pleading requirements, we find that the plaintiff has averred
sufficient facts to state claims upon which relief may plausibly
be granted for breach of an agreement by Defendant Goldner and G,
P & D to secure her investments with real estate, place her
invested monies in an escrow account and to pay the amounts due
and owing pursuant to the personal guarantee purportedly given by
Mr. Goldner individually.  In this regard, Count III specifically
references the terms of the Surety Agreement executed by Michael
Goldner on January 1, 2008 concurrent with the execution of the
$550,000 Note, the March 11, 2006 e-mail representation by
Goldner that the $690,000 investment was guaranteed and the
subsequent May 19, 2008 e-mail representations that the $150,000

---

[4]    In response to the defendants' motions, Plaintiff notes that because
she demands judgment only against Arcadia in Counts I and II and Arcadia did
not move for dismissal of these Counts, those claims must survive and that the
motions to dismiss made on behalf of Defendants Goldner and G, P & D are moot.
In reviewing the first two counts of the complaint, while we would agree that
the demand for judgment in those two counts appears directed only to Defendant
Arcadia, there are numerous allegations against the "Defendants" collectively.
Thus to the extent that Counts I and II may be interpreted as pleading breach
of contract claims against Mr. Goldner and the accounting defendant
individually and in view of Plaintiff's apparent agreement that she intended
that Counts I and II be directed only against Arcadia, any claims against
Defendants Goldner and G, P & D are hereby dismissed with prejudice.

investment was purportedly risk-free and guaranteed.  Count III
further alleges that Mr. Goldner made these representations both
individually and in his capacity as the president and on behalf
of the accounting defendant, G, P & D.  Given that Goldner has
allegedly failed to pay any amounts due and owing to the
plaintiff as per his obligations under the aforesaid surety
agreement, Plaintiff contends that the agreement has been
breached and she has suffered a $690,000 loss as the result of
this default.

Similarly, in Count IV, the plaintiff avers that the
defendants agreed to provide further security for her investments
by placing the monies into an escrow account and she attaches a
copy of the escrow account statement dating back to March 31,
2006 as Exhibit 8 to the complaint.  Since that time, however and
in purported violation of their agreement, the defendants failed
to maintain this escrow account and failed to provide her with
copies of regular statements from this escrow account despite her
repeated requests for such copies.  While it is certainly
possible that further details outlining a breach of contract
claim could be pled, we do not find that to be necessary here as
the averments contained in Counts III and IV of the plaintiff's
complaint are clearly adequate to state viable claims upon which
relief may plausibly be granted under this theory.

8

*2.  Plaintiff's Fraud in the Inducement Claim - Count V*

Defendants next move for dismissal of Count V of the complaint pleading Fraud in the Inducement on the grounds that it is barred by the gist of the action and economic loss doctrines.

A contract is voidable for fraudulent inducement "where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud." Harold v. McGann, 406 F. Supp. 2d 562, 574 (E.D. Pa. 2005), quoting College Watercolor Group, Inc. v. William H., 468 Pa. 103, 360 A.2d 200, 206 (1976).  Thus, a claim for fraud in the inducement may rest on misrepresentation of one's true existing state of mind.  Id.  While a claim for fraudulent inducement under Pennsylvania law entails the same elements as a claim for common law fraud, it also requires an allegation that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty to enter into the contract.  Leder v. Shinfeld, 609 F. Supp. 2d 386, 402 (E.D. Pa. 2009), citing, *inter alia*, Moser v. DeSetta, 527 Pa. 157, 589 A.2d 679, 682 (1991); Eigen v. Textron Lycoming Reciprocating Engine Division, 2005 Pa. Super. 141, 874 A.2d 1179, 1187 (Pa. Super. Ct. 2005).  It is further noteworthy that the Pennsylvania courts have consistently held that the concealment of a material fact by a defendant amounts "to a culpable misrepresentation no less than does an intentional false

9

statement." <u>Leder</u>, 609 F. Supp. 2d at 403 quoting <u>Moser</u>, 589 A.2d at 682.   Claims for fraudulent inducement are therefore also subject to Rule 9(b)'s requirement of pleading with particularity.  <u>Id.</u>, citing <u>Harold</u>, 406 F. Supp. 2d at 574-575.

Generally speaking, courts are cautious about permitting tort recovery based on contractual breaches.   In keeping with this principle, the Pennsylvania Superior Court[5] has recognized the 'gist of the action' doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.  <u>Reed v. Dupuis</u>, 2007 Pa. Super. 68, 920 A.2d 861, 864 (Pa. Super. Ct. 2007).   The Pennsylvania Superior Court has delineated four instances where the doctrine has been applied – to tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems

---

[5]   Although the Pennsylvania Supreme Court has yet to address or to formally adopt the 'gist of the action' doctrine, the Pennsylvania Superior Court, the U.S. Court of Appeals for the Third Circuit and the United States District Courts for the Eastern, Middle and Western Districts of Pennsylvania all have applied it numerous times and have repeatedly predicted that it will, eventually, be explicitly adopted by the Pennsylvania high court.   To be sure, the Supreme Court is clearly aware of the frequent use of the doctrine by both the lower and federal courts of the Commonwealth, but has declined at least three opportunities to put an end to its use.   For these reasons, the federal and Pennsylvania lower courts consider the doctrine to be viable and properly utilized in appropriate cases.  <u>Reardon v. Allegheny College</u>, 2007 Pa. Super. 160, 926 A.2d 477, 485-486, n. 10 (Pa. Super. Ct. 2007), citing, <i>inter alia</i>, <u>Yovva v. Pittsburgh Steelers Sports, Inc.</u>, 578 Pa. 479, 854 A.2d 425, 433 (2004); <u>Glazer v. Chandler</u>, 414 Pa. 304, 200 A.2d 416, 418 (1964); <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 680 (3d Cir. 2002); <u>Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 103 (3d Cir. 2001); <u>Hart v. Arnold</u>, 2005 Pa. Super. 328, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).  <u>See Also</u>, <u>Lombardi v. Allstate Insurance Co.</u>, Civ. A. No. 08-949, 2009 U.S. Dist. LEXIS 52951 at *27, n. 10 (W.D. Pa. June 23, 2009).

from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." <u>Lombardi v. Allstate</u>, at *25-*26, quoting <u>Reed v. Dupuis</u> and <u>Hart v. Arnold</u>, both <u>supra</u>.  Promises made to induce a party to enter into a contract that eventually become a part of the contract itself cannot be the basis for a fraud in the inducement claim under the gist of the action doctrine.  <u>Freedom Properties, L.P. v. Lansdale Warehouse Co., Ltd.</u> Civ. A. No. 06-5469, at *17, 2007 U.S. Dist. LEXIS 57116 (E.D. Pa. Aug. 2, 2007); <u>Owen J. Roberts School District v. HTE</u>, 02-7830, 2003 U.S. Dist. LEXIS 2997 at *10, *16 (E. D. Pa. Feb. 28, 2003).

The economic loss doctrine is similar in that it too is utilized by the Pennsylvania courts to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract. <u>Bohler-Uddeholm</u>, 247 F.3d at 103; <u>Woods v. ERA Med LLC</u>, Civ. A. No. 08-2495, 2009 U.S. Dist. LEXIS 3965 at *26 (E.D. Pa. January 21, 2009).  In essence it "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." <u>Werwinsky v. Ford Motor Co.</u>, 286 F.3d 661, 680 (3d Cir. 2002), quoting <u>Duquesne Light Co. v. Westinghouse</u>

11

Electric Corp., 66 F.3d 604, 618 (3d Cir. 1995).[6]  In other
words, a plaintiff should be limited to a contract claim when
loss of the benefit of the bargain is the plaintiff's sole loss.
Duquesne, 66 F.3d at 618.

In this case, the gravamen of the plaintiff's claim in Count
V is that she suffered damages in the amount of her $550,000
investment as a consequence of the defendants' having
misrepresented that the note would be secured by real estate in
order to induce her to loan them the money.  This is, we find,
just another way of saying that the defendants breached their
contractual promises and obligation to secure the investment.  We
are therefore hard-pressed to find that Count V is anything other
than a re-casting by Plaintiff of her breach of contract claims.
As such, Count V is barred by the gist of the action and economic
loss rules and shall therefore be dismissed.

   3.  *Count VI - Breach of Fiduciary Duty and Negligence*

Defendants Goldner and G, P & D also seek dismissal of Count
VI of the complaint in which the plaintiff appears to be invoking
the theories of negligence and/or breach of fiduciary duty.

---

[6]  As with the gist of the action doctrine, the Pennsylvania Supreme
Court has yet to formally adopt the economic loss doctrine but the Third
Circuit and the Pennsylvania Superior Court have predicted that it would do
so.  See, Bohler-Uddeholm, 247 F.3d at 104, n.10; REM Coal Co., Inc. v. Clark
Equipment Co., 386 Pa. Super. 401, 563 A.2d 128 (Pa. Super. Ct. 1989).  But
c.f., Bilt-Rite v. The Architectural Studio, 581 Pa. 454, 472, 866 A.2d 270,
285 (2005)(wherein Pennsylvania Supreme Court formally adopted §552 of the
Restatement (Second) Torts (1977) and held that the economic loss rule does
not bar recovery in cases brought thereunder involving alleged
negligent/fraudulent misrepresentations by architects on which contractors
subsequently relied).

It is axiomatic that to make a claim under Pennsylvania law for negligence a plaintiff must plead the existence of a duty or obligation recognized by law, a failure on the part of defendant to conform to that duty or a breach thereof, a causal connection between the defendant's breach and the resulting injury, and actual loss or damage suffered by the complainant.  Wawrzynek v. Stratprobe, Inc., 422 F. Supp. 2d 474, 483 (E. D. Pa. 2005), citing Orner v. Mallick, 515 Pa. 132, 537 A.2d 521, 523 (1987); Reformed Church of Scension v. Theodore Hooven & Sons, Inc., 2000 Pa. Super. 406, 764 A.2d 1106, 1109-1110 (Pa. Super. Ct. 2000).

A breach of fiduciary duty claim has been stated when the plaintiff establishes that a fiduciary or confidential relationship existed between himself and the defendants.  Fox International Relations v. Fiserv Securities, Inc., 490 F. Supp. 2d 590, 615 (E.D. Pa. 2007); Fogarty v. USA Truck, Inc., Civ. A. No. 08-111, 2008 U.S. Dist. LEXIS 50270 at *18-*19 (W.D. Pa. June 30, 2008).  To state a breach of fiduciary duty under Pennsylvania law, a plaintiff must plead a confidential relationship and: (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about the plaintiff's injuries.  Baker

13

v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 414-415
(E.D. Pa. 2006).  A confidential relationship occurs when "one
occupies toward another such a position of advisor or counselor
as reasonably to inspire confidence that he will act in good
faith for the other's interests." Silver v. Silver, 421 Pa. 533,
537, 219 A.2d 659, 662 (1966); Gurenlian v. Gurenlian, 407 Pa.
Super.  102, 116, 595 A.2d 145, 152 (1991); Fox International,
supra.  The special confidence required of the parties can be
satisfied by "an overmastering dominance on one side, or
weakness, dependence or justifiable trust on the other." Brandow
Chrysler Jeep Co. v. Data Scan Technologies, 511 F. Supp. 2d 529,
539 (E.D. Pa. 2007).

By way of their motion, Defendants Goldner and G, P & D
argue that the complaint fails within the meaning of Rule
12(b)(6) to plead a viable claim because Ms. Beck fails to allege
either a confidential relationship or that the defendants
negligently or intentionally failed to act in good faith and
solely for her benefit in all matters for which they were
employed.  They further submit that Count VI is also deficient
because it does not aver that the defendants' failures to act
solely for Plaintiff's benefit caused her damages.

We disagree.  Reading Count VI in the context of the
complaint as a whole and applying the notice pleading standard of
Rule 8(a), we find it sufficient.  To be sure, it is alleged that

14

the accounting defendants acted as the plaintiff's accountants from 2001 through the present providing services which included financial, tax planning and investment advice as well as the preparation of tax returns and that the plaintiff trusted and relied upon the defendants' advice and counsel in making her investment decisions.  Given that the nature of the accountant-client relationship is one which of necessity requires trust and confidence on the part of both parties, it is both foreseeable and plausible that Ms. Beck justifiably believed that the defendants were acting in her best interest and that she reasonably relied on their representations about the risks, safety and expected return on the investments at issue.  If the complaint's allegations are proven true and the defendants' representations are shown to have been false, it is certainly possible for a jury to assess liability against the defendants for both breach of fiduciary duty and negligence in the performance of their professional obligations.  The motion to dismiss Count VI is denied.

> 4.  *Motions to Dismiss Counts VII, VIII and IX Alleging Violations of the Securities Laws of the United States, Pennsylvania and New York*

Defendants next move to dismiss the plaintiff's claims for alleged violations of the U.S., Pennsylvania and New York securities laws again on the basis of the gist of the action doctrine and for her purported failure to plead fraud with

particularity.[7]

Section 10(b) of the federal Securities Exchange Act states in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -
>
>        . . . . .
>
>    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. ...

15 U.S.C. §78j(b).  Rule 10b-5, enacted by the SEC pursuant to its rulemaking authority, makes it "unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any

------

[7]  Because, for the reasons discussed *infra*, we find that the plaintiff has failed to state claims upon which relief may be granted in Counts VII, VIII and IX, we need not discuss the defendants' gist of the action argument.

security."

17 C.F.R. §240.10b-5.  Thus, Rule 10b-5 encompasses only conduct already prohibited by §10b.  <u>Stoneridge Investment Partners, LLC</u> <u>v. Scientic-Atlanta, Inc.</u>, ___U.S.___, 128 S. Ct. 761, 768 (2008), citing, <i>inter alia,</i> <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 341-342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) and <u>United States v. O'Hagan</u>, 521 U.S. 642, 651, 117 S. Ct. 2199, 138 L. Ed. 2d 724 (1997). The "customary 10b claim concerns fraudulent material misrepresentations or omissions that affect a security's value." <u>Berckley Investment Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 208 (3d Cir. 2006) quoting <u>Newton v. Merill Lynch,</u> <u>Peirce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 173 (3d Cir. 2001). In a typical §10b private action a plaintiff must prove:

> (1) a material misrepresentation or omission by the defendant;
>
> (2) scienter;
>
> (3) a connection between the misrepresentation or omission and the purchase or sale of a security;
>
> (4) reliance upon the misrepresentation or omission;
>
> (5) economic loss; and
>
> (6) loss causation.

<u>Stoneridge</u>, <u>supra</u>.

Claims under §10b-5 are subject to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(b), which means that with respect to

17

each act or omission, a plaintiff must identify each statement alleged to have been misleading, specify the reasons why it is misleading, and state with particularity the facts that give rise to a strong inference that the defendant acted with the required state of mind.  In re Nutrisystem, Inc. Securities Litigation, Civ. A. No. 07-4215, 2009 U.S. Dist. LEXIS 78544 at *26 (Aug. 31, 2009), citing Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2507-2508, 168 L. Ed. 2d 179 (2007);  In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 217 (3d Cir. 2002).

The Supreme Court, in its Tellabs decision, prescribed a three-step process for considering a motion to dismiss in a §10b action: First, courts must "accept all factual allegations in the complaint as true."  Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007), citing Tellabs, 127 S. Ct. at 2509 (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)).  Second, courts must consider the complaint in its entirety, including those additional sources that courts normally consider when ruling on motions to dismiss such as documents incorporated into the complaint by reference and matters of which a court can take judicial notice.  In so doing, the inquiry should focus on "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter,

18

not whether any individual allegation, scrutinized in isolation, meets that standard." Id., citing Id.  Third, to determine whether the pleaded facts meet the PSLRA's strong inference standard, courts must take into account plausible opposing inferences.  Id.

Scienter is defined as "a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable conduct, involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  In re Ikon Office Solutions, Inc., 277 F.3d 658, 667 (3d Cir. 2002), quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12, 96 S. Ct. 1375, 1381 n. 12, 47 L. Ed. 2d 668 (1976) and SEC v. Infinity Group Co., 212 F.3d 180, 192 (3d Cir. 2000), cert. denied, 532 U.S. 905, 121 S. Ct. 1228, 149 L. Ed. 2d 138 (2001).  While no longer "an independent route to scienter," and the courts must consider the complaint in its entirety in determining whether scienter has been properly pled, among the facts that a plaintiff can allege to plead scienter are those establishing a motive and an opportunity to commit fraud or those which constitute circumstantial evidence of either reckless or conscious behavior. Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 277

(3d Cir. 2009); <u>Luminent Mortgage Capital, Inc. v. Merrill Lynch</u> <u>& Co.</u>, Civ. A. No. 07-5423, 2009 U.S. Dist. LEXIS 74382 at *27 (E.D.Pa. Aug. 20, 2009).  <u>See also</u>, <u>Berckley</u>, 455 F.3d at 216, citing <u>In re Advanta Corp. Sec. Litigation</u>, 180 F.3d 525, 534-535 (3d Cir. 1999).

The Pennsylvania Securities Act of 1972, 70 P.S. §1-101, *et. seq.* ("PSA") is similar.[8]  Indeed, 70 P.S. §1-401 states that:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

(a) To employ any device, scheme or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Likewise, 70 P.S. §1-404 provides the following in pertinent part:

(a) It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, in this State:

---

[8]  Nowhere in Counts VII, VIII or IX does Plaintiff specify which sections of the securities laws of the United States, Pennsylvania or New York the defendants are alleged to have violated.  Rather, it is only in the plaintiff's brief in opposition to the defendants' motions to dismiss that she accuses the defendants of violating the following statutes: 15 U.S.C. §78u-4, 70 P.S. §§1-401, 1-404 and N.Y. Statute, Martin Act, including <u>McKinney's</u> <u>General Busines Law §352-c</u>.  A brief in opposition to a motion, however, does not constitute a pleading.  <u>See</u>, Fed. R. Civ. P. 7(a).

(1) To employ any device, scheme, or artifice to defraud the other person.

(2) To engage in any transaction, act, practice, or course of business which operates as a fraud or deceit upon any other person.

. . . .

(4) To engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

. . . .

(6) To represent that he is an investment counsel or to use the name "investment counsel" as descriptive of his business unless a substantial part of his business consists of rendering investment advisory services on the basis of the individual needs of his clients.

(7) Unless the person is registered as a broker-dealer under this act, to take and have custody of any securities or funds of any client if he fails to meet such requirements therefor as may be prescribed by the commission by regulation.

(b) In the solicitation of advisory clients, it is unlawful for any person to make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

. . . .

Finally, 70 P.S. §1-501 provides that violations of the foregoing provisions are actionable and may be redressed through the filing of a private civil action. See, e.g., 70 P.S. §1-501(a).

It has been held that Section 1-401 of the PSA was enacted to address substantially the same wrongful conduct as Rule 10b-5. Leder v. Shinfeld, 609 F. Supp. 2d at *18 citing Goodman v.

21

Moyer, 523 F. Supp. 35, 38 n.8 (E. D. Pa. 1981).  Given this fact

and the absence of determinative case law as to what is required

to make out a cause of action under the PSA, the federal courts

and the Pennsylvania trial courts that have considered the issue

have uniformly treated PSA claims as requiring the same elements

of proof as required under Rule 10b-5 and have therefore analyzed

them in identical fashion.  Leder, at *19 - *21; Joyce v. Bobcat

Oil & Gas Co., Civ. A. No. 1:07-1421, 2008 U.S. Dist. LEXIS 27181

at *40 (M.D. Pa. April 3, 2008); Sunquest information Systems,

Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 659 (W.D.

Pa. 1999).[9]  Therefore, the elements of this cause of action also

are: (1) that defendant made misstatements or omissions of

material fact; (2) with scienter; (3) in connection with a

purchase or sale of securities; (4) upon which plaintiffs relied;

and (5) plaintiff's reliance was the cause of their injury.

Gilliland v. Hergert, Civ. A. No. 05-1059, 2007 U.S. Dist. LEXIS

84508 at *5 (W. D. Pa. nov. 15, 2007).

In reviewing Counts VII and VIII in light of the foregoing,

we are constrained to agree with the defendants that they fail to

plead claims with the requisite degree of particularity under

either the PSA or §10b.  Indeed, the plaintiff here avers only

---

[9]  We could find no precedent whatsoever as to what elements must be
pled and proven to sustain a cause of action under §1-404 nor have the parties
cited us to such.  In as much as §1-404 in most respects mimics the provisions
of §1-401 (albeit as applied to paid financial/securities advisors), we
believe it appropriate to evaluate a §1-404 claim in the same fashion as
claims advanced under Sections 1-401 and 10b.

that the "[d]efendants made misstatements and/or had omissions about (2) the 'material fact' of [her] security interest in real estate (3) with 'cogent and compelling evidence' of scienter as Defendants acted with the intent or knowledge of the wrongdoing of making misrepresentations to Cheryl Beck and causing her to invest in products that did not have the security represented by Defendants..." Plaintiff goes on to allege that she relied upon the representations when making the investments and that the defendants "proximately caused" her "the damage of having an undersecured investment with $0 of security." As a result, Plaintiff contends that because of the defendants' breaches, these misrepresentations will cause her $550,000 in monetary damages. Finally, she submits that scienter is proven because the accounting defendants "made their misrepresentations while in the role" of her accountants. (Complaint, ¶s47-49, 51, 53-55, 57).

As the PSLRA makes clear, more than this is needed. With respect to each act or omission, a plaintiff must (1) identify each statement alleged to have been misleading, (2) specify the reasons why it is misleading, and (3) state with particularity the facts that give rise to a strong inference that the defendant acted with the required state of mind. Plaintiff has not done so. Indeed, even viewing these averments in the context of the complaint as a whole, we cannot find that the mere allegation

23

that the accounting defendants were the plaintiff's personal accountants automatically gives rise, without more, to the inference that they acted with the requisite scienter to make out valid securities violations claims. Additionally, as the defendants point out, Ms. Beck also fails to specifically allege how or why the $550,000 investment constitutes the sale of a security within the meaning of either the federal or the state acts. For these reasons, we conclude that dismissal of Counts VII and VIII is appropriate, albeit with leave to re-plead as we believe that it is plausible that Plaintiff may be able to correct her pleading deficiencies.

The New York General Business Law §352-c[10] also somewhat resembles federal Section 10b as it reads as follows:

> It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:
>
> (a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;
>
> (b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;
>
> (c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have

---

[10]  Again Count IX of the complaint is silent as to which precise section of the "New York Securities Law" the plaintiff is invoking. It was only in the briefs in opposition to the within motions for dismissal that Plaintiff specified the New York General Business Law, N.Y. Gen. Bus. Law §352-c as the statute allegedly violated by Defendants.

known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made; where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in section three hundred fifty-two of this article, regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.

2. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to engage in any artifice, agreement, device or scheme to obtain money, profit or property by any of the means prohibited by this section.

        . . . .

4. Except as provided in subdivision five or six, a person, partnership, corporation, company, trust or association, or any agent or employee thereof, using or employing any act or practice declared to be illegal and prohibited by this section, shall be guilty of a misdemeanor.

5. Any person, partnership, corporation, company, trust or association, or any agent or employee thereof who intentionally engages in any scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation or purchase of any securities or commodities, as defined in this article, shall be guilty of a class E felony.

6. Any person, partnership, corporation, company, trust or association, or any agent or employee thereof who intentionally engages in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or who makes any material false representation or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in this article, and thereby

> wrongfully obtains property of a value in excess of two
> hundred fifty dollars, shall be guilty of a class E felony.

However, it is not surprising after reading the foregoing

statute, which is otherwise known as the "Martin Act" that the

New York state and federal courts that have had occasion to

construe it have found that it does not permit a private cause of

action to be maintained – rather it provides the New York

Attorney General with the sole discretion to pursue securities

violations within or from the state of New York.  See In re Bayou

Hedge Fund Litigation, 534 F. Supp. 2d 405, 421 (S.D. N.Y. 2007);

CPC International, Inc. v. McKesson Corp., 70 N.Y. 2d 268, 276,

514 N.E. 2d 116, 118-119, 519 N.Y.S. 2d 804, 806-807 (1987).

Accordingly, as the plaintiff here cannot maintain her private

cause of action under the New York law, we shall dismiss Count IX

of the complaint with prejudice for failure to state a claim upon

which relief may be granted.

   5.  Count XI – Punitive Damages

   The defendants also move for dismissal of Count XI (which

should properly be delineated as Count X) because Pennsylvania

does not recognize an independent cause of action for punitive

damages.  Plaintiff (quite properly) agrees with this argument

and thus Count XI shall likewise be dismissed for failure to

state a cause of action.

   It is for all of the foregoing reasons that the motions to

dismiss are granted in part and denied in part pursuant to the attached order.